**WEST GULF MARITIME ASSOCIATION et al.**

v.

**INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO, et al.**

Civ. A. No. 75–C–116.

United States District Court,
S. D. Texas,
Corpus Christi Division.

Aug. 29, 1975.

Bryan F. Williams, Jr., Galveston, Tex., for plaintiffs West Gulf Maritime Ass'n, TTT Stevedores of Texas, Inc., TTT Ship Agencies, Inc., and Dalton Steamship Corp.

Warner F. Brock, Houston, Tex., for defendants International Longshoremen's Ass'n, AFL–CIO, and South Atlantic and Gulf Coast District, Intern. Longshoremen's Ass'n.

Herman Wright, Houston, Tex., for defendant Local 872 International Longshoremen's Ass'n.

James P. Wolf, Houston, Tex., for defendant Local 1273 International Longshoremen's Ass'n.

## MEMORANDUM AND ORDER

OWEN D. COX, District Judge.

This suit was filed on August 19, 1975. It was brought by Plaintiffs, in accordance with the Labor Management Relations Act, for injunctive relief and to compel arbitration under the terms of an alleged collective bargaining agreement entitled "Deep Sea and Coastwise Longshoring and Cotton Agreement, Texas Ports and the Port of Lake Charles, Louisiana." The Labor Management Relations Act, United States Code, Title 29, Section 185, reads, in part:

"185. *Suits by and against labor organizations—Venue, amount, and citizenship.*

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

The factual contentions of Plaintiffs are, briefly, as follows:

1. The Plaintiffs all have a financial interest, one way or another, by ownership and/or charter and/or operators and/or agents, in the Motor Vessels BOSANKA, AEGIS BRAVERY, HELLAS IN ETERNITY, and MARIO Z, all of which have been or were, at the time of the hearing on the preliminary injunction, being loaded with grain for shipment to the Soviet Union under a temporary restraining order in this cause; and in other such vessels which will hereafter enter Texas ports for the purpose of loading grain destined for the Soviet Union.

2. The Defendants (except International Longshoremen's Association, AFL–CIO) are parties to and bound by an agreement effective October 1, 1974, entitled "Deep Sea and Coastwise Longshoring and Cotton Agreement, Texas Ports and the Port of Lake Charles, Louisiana." Such agreement has a provision that "there shall be no strikes or other stoppage of work" during the life of the contract.

3. On or about 6:00 p. m. on August 18, 1975, Defendants engaged in a stoppage of work at Houston, Texas, aboard M/V BOSANKA. On the same date (August 18), plaintiffs invoked grievance and arbitration procedures set forth in the agreement. However, the work stoppage continued.

4. Both the work stoppage and the refusal of Defendants to exhaust the remedy available to them by the grievance procedures provided for in the contract constituted breaches of the contract.

Plaintiffs then allege that they will suffer, because of the work stoppage, immediate and irreparable injury, loss and damage unless said Defendants are enjoined from continuing such work stoppage; and they then pray for a temporary restraining order, a preliminary injunction pending compliance with grievance procedures, and, thereafter, for a permanent injunction.

This litigation was originally commenced in the Galveston Division of the Southern District of Texas, and after the initial temporary restraining order was granted these proceedings were transferred to the Corpus Christi Division. The temporary restraining order was thereafter expanded so that it covered, altogether, four motor vessels, being BOSANKA, HELLAS IN ETERNITY, AEGIS BRAVERY, and MARIO Z. This Court set the date of August 25, 1975, for hearing on the preliminary injunction, and the hearing was commenced on the appointed date.

At the commencement of the preliminary injunction hearing, no vessels, other than those just named, were subject to any temporary restraining order issued by this Court, and none were actually in port awaiting but unable to load. However, there were other vessels approaching the Port of Houston, and perhaps other Texas ports, for the purpose of loading grain for shipment to the Soviet Union.

In this hearing, a printed document, entitled "Deep Sea and Coastwise Longshoring and Cotton Agreement, Texas Ports and the Port of Lake Charles, Louisiana," identified as Exhibit "A" attached to Exhibit 1, being the same document as Plaintiffs have alleged to be the agreement by which they and the District and Locals are bound, was offered by Plaintiffs and was admitted into evidence. Said instrument does not carry the signatures of any of the parties named in its first paragraph, and the Defendants have contended that the agreement was never consummated because of the failure of the Plaintiff West Gulf Maritime Association to obtain, as requested by Defendants, the signatures of all of its members on the contract.

■ The Court has determined the Plaintiffs are correct in their contention, and finds such instrument is, in fact, a binding contract between the parties to this litigation, except as to Defendant International Longshoremen's Association, AFL–CIO.

In arriving at this determination, the Court found that the provisions set forth in such exhibit were agreed to by the parties to this litigation, and many of the provisions of the contract, Exhibit 1(A), were not in the previous agreement between these parties. It further found that a number of the provisions thereof, and particularly those not in prior agreements, had been used, acted upon and complied with since October 1, 1974, which was the effective date of the agreement, as printed on the front thereof and as stated in such instrument. Both parties have obtained numerous copies of the printed instrument and have treated it as being in effect. Whether the Defendants' actions under the contract waived their claimed requirement that the signatures of the several members of the maritime association be affixed, or whether by such actions the terms of said contract were ratified, or said Defendants are now estopped to claim they are not bound by its terms, nevertheless, the contract in evidence before this Court is a valid and subsisting contract between the parties.

■ While Defendants did not concede the existence of a viable contract between the parties, they argued that this case is governed by Section 4 of the Norris-La-Guardia Act, in which the anti-injunction provisions are set forth, 29 U.S.C. § 104(a); and by *Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970); *Amstar Corp. v. Meat Cutters & Butchers,* 468 F.2d 1372 (5th Cir. 1972), and *The Carnation Company v. Sales, Drivers, Deliverymen, Warehousemen & Helpers, Local Union No. 949,* C.A. 74–H–775 (S.D.Tex.), filed June 28, 1974; and, consequently, this District Court has no jurisdiction to grant injunctive relief. We disagree. In discussing our disagreement just stated, we point out that the following language of Norris-LaGuardia, to wit:

"104. *Enumeration of specific acts not subject to restraining orders or injunctions.*

"No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case *involving or growing out of any labor dispute* to prohibit any per-

son or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts: (Emphasis ours.)

"(a) Ceasing or refusing to perform any work or to remain in any relation of employment;"

*only* withdraws the jurisdiction of this Court to issue injunctive orders when certain enumerated activities "involving or growing out of any labor dispute" are involved.

The provisions of said Norris-LaGuardia Act, Section 13 (29 U.S.C., § 113), set forth the definition of "labor dispute," which reads:

" § 113. *Definitions of terms and words used in chapter.*

" *    *    *

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

The next step for us to take in determining the applicability of Norris-LaGuardia was to determine whether or not this controversy before the Court involves or grows out of a labor dispute as defined by that statute. If it does, then the general grant of jurisdiction under Section 301 [29 U.S.C., § 185(a)], would not authorize injunctive relief. However, we cannot do otherwise than to find no labor dispute, in the face of the repeated admissions of Defendants that no such dispute exists. Thus, Norris-LaGuardia is not applicable to the situation before this Court. As a result of such determination, we need not discuss *Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), or *Amstar Corp. v. Meat Cutters & Butchers,* 468 F.2d 1372 (5th Cir. 1972), because they are concerned with the application of the Norris-LaGuardia Act.

Our approach to this problem coincides with that taken by District Judge Atkins in *Harrington v. International Longshoremen's Association,* 356 F.Supp. 1079 (S.D. Fla.1973). We do not consider our approach is in conflict with District Judge Bue in *The Carnation Company v. Sales, Drivers, Deliverymen, Warehousemen, Helpers, Local Union No. 949, supra,* since he was dealing with an *Amstar* situation.

This Court concludes it is entitled to proceed under Section 301 of the Labor Management Relations Act [29 U.S.C., § 185(a)] and to disregard the anti-injunctive provisions of Norris-LaGuardia.

■ The Court finds that the Plaintiffs will likely prevail on the merits in this case. This conclusion of the Court naturally follows since it has considered, in some detail, the issues raised and discussed in this memorandum and order. The Court also finds Plaintiffs will suffer irreparable injuries if no injunctive relief is granted for which they have no adequate remedy at law. There appears to be no way to estimate with any certainty the amount of business which might leave Plaintiffs, go elsewhere and never return; nor any way to establish lost profits if the work stoppage continues. There is no way to calculate what confusion might exist if Plaintiffs would now try to substitute other business activity for the lost Soviet Union shipments. Equity certainly favors Plaintiffs, who are bound to be hurt, while there is no way the longshoremen can be hurt financially. This injunctive relief will serve the public interest in upholding and enforcing valid contracts. In this regard, we must not overlook Defendants are trying to argue a political issue here, and are not claiming anything more than a speculative concern for the future price of grain products in this country. However worthy that political cause may be, it should not be taken into account in deciding the need for injunctive relief. Consequently, the Court concludes that the traditional elements for a preliminary injunction should be and they are present in this case. *Blackshear Residents Organiza-*

*tion v. Romney,* 472 F.2d 1197 (5th Cir. 1973).

■ Having now resolved in favor of Plaintiffs what the Court considers the major issues in this case to be, several other arguments made by Defendants will be disposed of. One was made early in the hearing. Counsel for Defendants represented to the Court that a number of farm bureaus in the middle west have filed charges of unfair labor practices with the National Labor Relations Board. These Defendants then, based upon such representation, urged the doctrine of preemption. Assuming unfair labor practice charges have been filed, and we are satisfied they have been, and that the subject matter of this litigation is within the jurisdiction of the NLRB, nevertheless, its jurisdiction is not exclusive. This suit involves the breach of an agreement and the Court concludes its jurisdiction has not been destroyed by the actions of said farm bureaus.

■ The Court has also been faced with the defensive plea that those participating in the work stoppage in this case, which was instituted as the result of the adoption of the July 21, 1975, resolution of the International Longshoremen's Association which reads:

> "That this Convention hereby declares it to be the policy of the ILA to refuse to load grain destined for the Soviet Union unless and until the President of the ILA is satisfied that the interests of the American public are adequately protected; and all ILA Locals and members are directed to honor that policy."

are protected by the First Amendment. However, this Court does not believe the institution of a work stoppage in violation of valid contract provisions is a valid argument for First Amendment protection. A First Amendment right can be waived, and was in this case.

There are no issues of consequence which remain unanswered. The Court has determined the Plaintiffs should prevail in this proceeding.

We are aware that there may be what appears to be an inconsistency in ordering, as we will do, Plaintiffs to proceed with arbitration under the contract here involved when there is no labor dispute. However, Defendants District and Local unions have refused to comply with their contract obligations. So, this suit is more nearly a breach of contract suit than a labor case. And, the language of the grievance procedure and arbitration provisions in the contract refers to "disputes involving the interpretation or application of the terms of this agreement" rather than only labor disputes. Further, all work stoppages are subject to arbitration under the contract. Under the circumstances of this case, we conclude there is no inconsistency.

It is therefore ORDERED that Defendants and each of them, their officers, representatives, members, agents, servants, employees, and those persons in active concert or participation with them, be preliminarily enjoined by this Court from engaging or participating in, inducing, encouraging, suffering, obtaining, or ordering or continuing any work stoppage in connection with the loading of grain, the destination of which is the Soviet Union, on vessels at Texas ports which are owned, chartered, or serviced by Plaintiffs, or any of them.

This preliminary injunctive relief, upon Plaintiffs filing bond in the amount of $2,500.00, will continue in effect pending Plaintiffs' pursuing the contract grievance procedures, which shall be commenced forthwith and expedited, and until the 30th day of September, 1975, at 9:30 o'clock a. m., at which time the matter of the permanent injunction will be heard by the Court.